## 2004 ME 116

### STATE of Maine

v.

### Gerald FORSYTH.

Supreme Judicial Court of Maine.

Submitted on Briefs: June 24, 2004.

Decided: Aug. 31, 2004.

---

* Although not present at oral argument, Justice Clifford's and Justice Calkins's participation in this decision is permitted by M.R.App. P. 12(a).

Evert M. Fowle, District Attorney, James G. Mitchell, Asst. Dist. Atty., Skowhegan, for State.

Wayne R. Foote, Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Gerald Forsyth appeals from a judgment entered in the Superior Court (Somerset County, *Jabar, J.*) convicting him of operating a motor vehicle under the influence, 29–A M.R.S.A. § 2411(1) (1996) (Class D). Forsyth asserts that the Superior Court erred when it allowed the arresting officer to testify to statements made by Forsyth, in violation of a suppression order. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] This is the second installment of this Forsyth saga.[1] Forsyth was arrested by a state police officer after being held in custody at a federal border inspection station in Sandy Bay Township. The details of the events leading up to the arrest are summarized in our opinion on the first appeal, *State v. Forsyth*, 2002 ME 75, 795 A.2d 66. Following the arrest, Forsyth filed a motion seeking to suppress all the

---

1. *See State v. Forsyth*, 2002 ME 75, 795 A.2d 66.

oral statements made by him to the arresting officer, including the verbal components of the field sobriety tests, contending that they were made in response to custodial interrogation without a *Miranda*[2] warning. At the suppression hearing, Forsyth amended his motion to suppress all the field sobriety test results, all the observations made by the arresting officer during those tests, and the results of the blood-alcohol level test administered to Forsyth as "fruit of the poisonous tree."

[¶ 3] The District Court granted the motion in part by stating explicitly which statements *were not* subject to suppression and stating explicitly that all other statements were suppressed, including the verbal components of the field sobriety tests. The court also suppressed the blood-alcohol level test results, reasoning that without Forsyth's responses to the officer's questioning and without the verbal components of the field sobriety test there was insufficient probable cause to administer the test. *Forsyth*, 2002 ME 75, ¶¶ 2–7, 795 A.2d at 67–69.

[¶ 4] The State appealed and we vacated the suppression order in part, allowing the State to introduce the blood-alcohol level test results in evidence at trial. The State did not contest that portion of the order suppressing Forsyth's statements and we did not disturb it. *Id.* ¶ 8, 795 A.2d at 69.

[¶ 5] Despite the District Court's suppression order, the Superior Court allowed, over objection, the arresting officer to testify at trial to some of the statements made by Forsyth which were the subject of the suppression order and not challenged on the final appeal. A jury found Forsyth guilty of operating under the influence.

## II. DISCUSSION

[¶ 6] Forsyth contends that the Superior Court violated the District Court's suppression order by allowing the arresting officer to testify to suppressed statements made by Forsyth. The State contends that none of the suppressed statements were admitted at trial.

[¶ 7] A review of the transcript makes clear that the arresting officer did testify to statements suppressed by the District Court. In particular, the transcript reveals that, despite timely objections by Forsyth, the court allowed the following exchange between the prosecutor and the arresting officer in discussing the so-called walk and turn test:

Q. And did Mr. Forsyth tell you he had any physical impairments?

A. He said that there were none that would affect him in performing these tests.

The State argues that allowing the officer to testify to this statement made by Forsyth complied with the suppression order. The State asserts that the order suppressed the verbal portions of the walk and turn test and that Forsyth's response to the question posed by the officer was not a verbal portion of the test. The State contends that the question was, instead, a mere preliminary question for the officer to determine whether or not a test would be fair and not a question eliciting incriminating statements. The State analogizes the question to a question about general health and other similar booking questions.

[¶ 8] We do not agree that such a question does not seek to elicit incriminating statements. The question asks a suspect to provide information to assist the officer in ruling out anything other than intoxication as an explanation for his performance on a field sobriety test. Moreover,

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the statement had already been suppressed by an order of the District Court and the State did not challenge that aspect of the order.

[¶ 9] Whether or not Forsyth's answer was a verbal component of a particular field sobriety test, the District Court mandated a blanket suppression by stating explicitly which statements *were not* subject to the suppression order and stating explicitly that *all* other statements were suppressed: "[A]ll statements made by the Defendant to Officer Peary, other than those stating his identification information, that he had a friend in Solon, and that he had relatives in Calais, are suppressed . . . ."

[¶ 10] The Superior Court ignored the District Court's order and determined on its own that Forsyth's answers to the officer's questions were not "incriminating statement[s] that would be subject to suppression." The District Court had already determined, after a testimonial hearing on Forsyth's motion to suppress and after reviewing memoranda of law submitted by both sides, that the statements were to be suppressed because they were obtained in violation of Forsyth's constitutional rights. The State's appeal did not challenge the suppression of the statement, but only the suppression of the blood-alcohol test results.

[¶ 11] It was error to allow the officer to testify to Forsyth's statement. We consider a trial error harmless "when it is highly probable that it did not affect the jury's verdict." *State v. DeMass,* 2000 ME 4, ¶ 17, 743 A.2d 233, 237. However, when an error in a criminal case is viewed as one affecting constitutional rights, we will not consider it harmless unless, upon a review of the whole record, we are satisfied beyond a reasonable doubt that the error did not affect substantial rights or contribute to the verdict obtained. *State v. Burdick,* 2001 ME 143, ¶ 29, 782 A.2d 319, 328. "Thus, a trial error of constitutional magnitude is not harmless if there is a reasonable possibility that it contributed to the verdict regardless of whether there was sufficient other evidence on which the defendant could have been convicted." *State v. Warren,* 1998 ME 136, ¶ 17, 711 A.2d 851, 857–58.

[¶ 12] As Forsyth contends, the trial court's error does affect constitutional rights because the admitted statements were suppressed for being elicited in violation of his *Miranda* rights, which the United States Supreme Court recently affirmed as being constitutionally protected rights in *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).[3]

[¶ 13] To say that an error that interferes with a criminal defendant's constitutional rights is harmless because there is sufficient other evidence to support a conviction is to say it does not matter if we violate the defendant's constitutional rights because he is guilty anyway. This we cannot do. Constitutional rights exist for all criminal defendants, regardless of their guilt or innocence and regardless of the amount of evidence against them.

[¶ 14] Given the standard of review, namely whether it is reasonably possible that the error contributed to the jury's verdict, regardless of the sufficiency of the other evidence to support a conviction, the error is not harmless and the judgment must be vacated. Forsyth's statement that he had no physical impairments that

---

3. Also, although not raised by Forsyth, it seems obvious that the criminal defendant's constitutional right to due process is seriously impinged when he is given a pretrial hearing and the court enters a suppression order only to later have the trial court not enforce a portion of it.

would keep him from performing the walk and turn test is evidence that his failure to perform the test as instructed was due to impairment resulting from intoxication and not some other factor. The arresting officer was allowed to testify to this statement over objection. It is reasonably possible—if not likely—that such evidence contributed to the jury's verdict.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.